UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL T.,[1]

                         Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

DECISION & ORDER

20-CV-1542MWP

## PRELIMINARY STATEMENT

Plaintiff Michael T. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Income Benefits and Supplemental Security Income ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 14). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

>  (4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his] past work; and
>
>  (5)  if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.  **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that although plaintiff had engaged in work-activity after December 14, 2015, the application date, his earnings did not rise to the level of substantial gainful activity. (Tr. 17).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of "right shoulder tendinitis with chronic pain and sciatica." (Tr. 18). The ALJ also found that plaintiff had other impairments that were nonsevere. (Tr. 18-20). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 20). The ALJ concluded that plaintiff retained the RFC to perform medium work involving frequent climbing of ramps, stairs, ladders, ropes, or scaffolds, and occasional

---

[2] The administrative transcript (Docket # 9) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.


balancing, stooping, kneeling, crouching, crawling, and reaching in all directions bilaterally. (Tr. 20-25). At steps four and five, the ALJ found that plaintiff was unable to perform any past relevant work but concluded, based on plaintiff's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that plaintiff could perform, such as parts delivery driver, newspaper deliverer, and driver. (Tr. 25-26). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III.    Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence. (Docket # 11-1). Plaintiff's sole challenge is that the ALJ erroneously determined that he could perform the lifting and carrying requirements of medium work.[3] (*Id.* at 9-14).

### IV.    Analysis

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant

---

[3] Plaintiff's contentions relate only to the physical component of the ALJ's RFC determination. Therefore, I address only the physical portion of the RFC. *See*, *e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 380 F. App'x 231 (2d Cir. 2010). Medium work is defined by the regulations as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

      Plaintiff contends that the ALJ's determination that he retained the ability to perform the lifting and carrying requirements of medium work is erroneous because it conflicts with the opinion authored by David Brauer, M.D. – an opinion to which the ALJ gave "substantial weight." (Docket # 11-1 at 14). On May 23, 2017, Brauer conducted a consultative internal medicine examination of plaintiff. (Tr. 286-90). Plaintiff reported that he had injured his back at work approximately three years earlier and that he continued to suffer constant pain in his low back that sometimes radiated to his hips and caused tingling in his legs. (*Id.*). According to plaintiff, he had not been treated by a doctor for his injury and had not received any imaging of his spine, although he had visited a chiropractor on a few occasions, which had provided some relief. Plaintiff reported that he managed his pain using an over-the-counter analgesic. (*Id.*). With respect to his daily activities, plaintiff reported that he lived alone, routinely shopped, and was able to cook, clean, do laundry and care for his personal hygiene. (*Id.*).

      Upon examination, Brauer noted that plaintiff had a normal gait, used no assistive devices, and did not need any assistance changing for the exam, rising from the chair or getting on or off of the exam table. (*Id.*). According to Brauer, plaintiff did not appear to be in acute distress, demonstrated a normal stance, could walk on his heels and toes, and could squat fully.

(*Id.*).  Brauer noted that plaintiff's cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally.  (*Id.*).  Brauer identified no scoliosis or kyphosis, and the straight leg raise was negative bilaterally.  (*Id.*).  Brauer found full range of motion in plaintiff's shoulders, elbows, forearms, wrists, hips, knees and ankles bilaterally.  (*Id.*).  He also observed full strength in plaintiff's upper and lower extremities without any noted sensory deficits.  (*Id.*).  Brauer further found plaintiff's hand and finger dexterity to be intact and his grip strength to be five-out-of-five bilaterally.  (*Id.*).

Brauer reviewed imaging of plaintiff's lumbar spine that demonstrated straightening, mild to moderate degeneration, and an old mild compression fracture.  (*Id.*). Brauer diagnosed plaintiff with chronic low back pain and opined that he would have moderate limitations sitting, standing, or walking for prolonged periods "due to chronic low back pain, per claimant history."  (*Id.*).  He also opined that plaintiff had moderate limitations in his ability to "push, pull, lift, or carry heavy objects repetitively due to back pain, per claimant history."  (*Id.*).

As an initial matter, I disagree with plaintiff that the moderate limitations Brauer assessed are necessarily inconsistent with the lifting and carrying requirements of medium work. Although some caselaw suggests that moderate limitations in carrying and lifting are inconsistent with medium work, *see Avila v. Comm'r of Soc. Sec.*, 2021 WL 3774317, *20 (S.D.N.Y.) (concluding moderate limitations in "bending, pushing, pulling, lifting and carrying" were incompatible with RFC determination that plaintiff could perform the lifting and carrying requirements of medium work), *report and recommendation adopted by*, 2021 WL 3774188 (S.D.N.Y. 2021); *Patrick John B. v. Comm'r of Soc. Sec.*, 2020 WL7767643, *4 (W.D.N.Y. 2020) ("[nurse's] opinion that plaintiff had moderate limitations in lifting . . . and carrying is inconsistent with [the ALJ's] determination that . . . plaintiff had the RFC to fully perform those

tasks to the level necessary for medium work"); *Kociuba v. Comm'r of Soc. Sec.*, 2017 WL 2210511, *8 (N.D.N.Y. 2017) ("[c]ourts have also suggested that a moderate limitation in exertional activities such as lifting, carrying, pushing, and pulling is more consistent with an ability to perform light (rather than medium) work"), the moderate limitations assessed by Brauer in this case applied only to activities involving "*repetitive*" lifting and carrying of "*heavy*" objects – activities that are not necessarily inconsistent with the requirements of medium work, which include only occasional lifting and carrying of objects weighing up to fifty pounds and frequent lifting and carrying of objections up to twenty-five pounds, *see Henry v. Colvin*, 2015 WL 8074299, *6 (W.D.N.Y. 2015) ("moderate limitations with respect to *excessive* bending, pushing, pulling, carrying or lifting *heavy* objects . . . are likewise consistent with the parameters of the 'medium' exertion level of work") (emphasis added).

Moreover, in this case, plaintiff's ability to perform the lifting and carrying requirements of medium work is supported by other substantial evidence in the record, and the ALJ provided reasons "tending to support the finding that, despite the moderate limitations[,] . . . [plaintiff] could still perform [medium] work." *See Carroll v. Colvin*, 2014 WL 2945797, *4 (W.D.N.Y. 2014). The ALJ supported his determination that plaintiff could perform the lifting and carrying requirements of medium work with a discussion of the sporadic and conservative treatment sought by plaintiff to address his back and shoulder impairments. For instance, the ALJ summarized records from three emergency department visits during which plaintiff sought treatment for his back or shoulders. (Tr. 21-23). During those visits, as noted by the ALJ, imaging results demonstrated at most some moderate degenerative changes, physical examination findings were relatively minimal, and symptoms were treated with ibuprofen. (*Id.*).

Additionally, as the ALJ explained, his determination as to plaintiff's RFC is supported by plaintiff's own statements concerning his broad range of activities of daily living, including work activity. (Tr. 23-24). Records from plaintiff's substance abuse treatment programs demonstrate that he participated in a wide range of activities during the relevant period, including swimming, playing basketball, performing household chores, and performing work activities involving welding, heavy lifting, and repairing apartments. (Tr. 23). Indeed, in December 2018, plaintiff reported obtaining employment working twelve-hour days. (*Id.*). Plaintiff reportedly lost this job due to scheduling conflicts rather than due to an inability to perform the physical requirements of the employment. (*Id.* (citing Tr. 564)). *See* 20 C.F.R. § 416.929(c)(3) (a claimant's "pattern of daily living" is an "important indicator of the intensity and persistence of [the claimant's] symptoms"); *Durante v. Colvin*, 2014 WL 4843684, *2 (D. Conn. 2014) (ALJ properly discussed plaintiff's activities of daily living when formulating RFC; "[w]hile that court's admonition as to the ill wisdom of relying thoughtlessly on evidence of a claimant's ability to manage activities of daily living . . . for the purpose of discrediting evidence of more serious-seeming RFC restrictions in the work context is well-taken, the ALJ does not appear to have erred in this way here"); *Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *10 (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining his RFC").

In addition to the evidence relied upon by the ALJ, the record also contained a medical opinion that further supports the RFC determination. On May 31, 2017, state consultant D. Miller, DO, reviewed the available medical records, including the opinion authored by Brauer, and provided an opinion of plaintiff's physical limitations. Miller concluded, "based on [plaintiff's] lack of treatment, ability to complete [activities of daily living], normal physical

exam, and lack of objective radiological findings," he had no physical work-related limitations. (Tr. 81).  In sum, I find that ALJ adequately explained why his RFC findings were supported by record evidence, including Brauer's opinion that plaintiff had moderate limitations for activities involving repetitive lifting and carrying of heavy objects, and conclude that his determination is supported by substantial evidence in the record.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB/SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

<div style="text-align: right;">
*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge
</div>

Dated:  Rochester, New York
        August 31, 2022